UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIC HELD,<br><br>               Plaintiff,<br><br>  v.<br><br>SCOTT SILVER and SILVER AND<br>ASSOCIATES, LLC,<br><br>          Defendants. | 3:10-cv-00992 (CSH) |

RULING ON PLAINTIFF'S MOTION TO DISMISS
DEFENDANT'S AMENDED COUNTERCLAIM

**HAIGHT, Senior District Judge:**

I.    **Introduction and Summary of Facts**

Plaintiff Eric Held brings this diversity action against Defendants Scott Silver and Silver and Associates LLC (hereinafter collectively "Defendants"), alleging in his Amended Complaint that Defendants had issued him a "fraudulent promise of compensation" on which he relied, thereby causing him to "turn down an outstanding offer at a competing, established financial advisory firm which had offered him annual compensation totaling approximately $250,000.00." [Doc. 18] at 5. Accordingly, Plaintiff brings six causes of action against Defendants:  breach of contract;  fraud; failure to pay wages in violation of C.G.S.A. § 31-72; unjust enrichment; *quantum meruit*; and promissary estoppel. *Id.* at 14-21.  Defendants filed a consented-to Motion to Amend their Answer, Affirmative Defenses and Counterclaim to Plaintiff's Amended Complaint, which the Court granted. Defendants' First Amended Answer to Plaintiff's Amended Complaint, Affirmative Defenses and Counterclaims was thereafter filed [Doc. 32].

1

In Defendants' Amended Answer, Affirmative Defenses, and Counterclaim, Defendant Silver individually brought a Counterclaim against Plaintiff for libel per se.  *Id.* at 11-13.   Silver alleged in this Counterclaim that "[o]n or about August 4, 2010, [Plaintiff], unbeknownst to Silver, published via email to one Alexandre Appadoo," who was at the time "an independent consultant with [Silver and Associates], false statements regarding Silver's honesty and integrity with respect to his business practices." *Id.* at 12.  Silver's Counterclaim alleges that Plaintiff wrote to Appadoo that "Silver failed to pay [Defendant] for his work," that "Silver failed to honor their agreement," and that "Silver 'comes first and he will clearly burn everyone else if he wants to which he did with [Plaintiff].'"  *Id.*  In addition, Silver avers that Plaintiff "forwarded a copy of his original Complaint for the present lawsuit to Appadoo, which ... contains additional false statements regarding Silver's honesty and integrity with respect to his business practices."  *Id.*  Defendant Silver prays for such defamation damages against Plaintiff "as may be proven at trial, plus interest, plus punitive damages in such amount as may be proven at trial, together with such other and further relief as the Court deems just and equitable."  *Id.* at 13.[1]

Plaintiff now moves to dismiss Silver's Counterclaim.  His brief in support of that motion [Doc. 33] contends that the August 4, 2010 email Plaintiff sent to Alexandre Appadoo contained a summary of Plaintiff's "original claims against the Silver Defendants," and that, in this email, Plaintiff had done nothing more than "express[] his opinion of Silver as a person and his opinion of

---

[1]  While Defendants' Amended Answer, Affirmative Defenses, and Counterclaim avers that the email in question which Plaintiff Held sent to Alexandre Appadoo was attached as Exhibit A, no such Exhibit was filed with this amended pleading. *See* [Doc. 32].  However, a copy of the August 4, 2010 email was filed as an exhibit to Defendant's initial Answer.  Given that Plaintiff also cites the text of this email, the Court will use and cite the email exhibit provided with Defendants' initial Answer – i.e., [Doc. 26] at 10 – throughout this Ruling.

Silver's personal motivation." [Doc. 33] at 1.  Plaintiff thus avers that this "email contains no defamatory statements" as "the forwarding of a publicly available original complaint to a third party is not actionable and does not constitute 'publication,'" the allegations contained in Plaintiff's original complaint are absolutely privileged, and, furthermore, this email contained "statements which simply express [Plaintiff's] personal opinion."  *Id.*

The full text of the email in question, including all headings but omitting Held's contact information and signature line, is as below:

> From: Held, Eric
> Sent: Wednesday, August 04, 2010 2:01 AM
> To: Appadoo, Alexandre
> Subject: S&A - Scott Silver
>
> Alex
>
> As a fellow Booth MBA, I feel compelled to let you know about my unpleasant experience with Scott Silver.  I'm sure our story is very similar and I would hate for things to end the same way for you as they did for me.  I joined Scott during my last year at Chicago in 2008 and worked as an independent consultant for him until he failed to pay me for my work.
>
> Due to his failure to honor our agreement, I had to retain lawyers to pursue collection.  We filed a complaint last month and I learned today that Scott was finally served last Friday.  I wanted to reach out to you as soon as this happened.  I strongly recommend that you take a quick look through the complaint.  It might change the way you think about Scott's promises.
>
> I think Scott is an honorable guy and I'm sure he would truly like to pay me.  However, he comes first and he will clearly burn everyone else if he wants to which he did with me.
>
> If you would like to chat, I am available any time at [phone number].  I think it definitely makes sense for us to compare notes.
>
> Eric

*See* [Doc. 26] at 10.

In this Ruling, the Court resolves Plaintiff's motion to dismiss Defendant Silver's Counterclaim.

## II.   Legal Discussion

### A.   Legal Standards for Motion to Dismiss

A motion to dismiss for a failure to state a claim upon which relief can be granted is brought under Fed. R. Civ. P. 12(b)(6).[2]  Such a motion must be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [] matters of which judicial notice may be taken." *Lunardini v. Massachusetts Mut. Life Ins. Co.*, 696 F.Supp. 2d 149, 155 (D. Conn. 2010) (citing *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) and *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

A "'complaint' and a 'counterclaim' are treated the same for the purposes of a motion to dismiss." *Western World Ins. Co. v. Architectural Builders of Westport, LLC*, 520 F.Supp. 2d 408, 410 n.5 (D.Conn. 2007); *see also, e.g., Kopperl v. Bain*, 3:09-CV-01754, 2010 WL 3490980 at *2 (D.Conn. Aug. 30, 2010).  "Therefore, with regard to the motion to dismiss standard, the terms 'counterclaim' and 'counterclaim plaintiff' (or 'counterclaimant') can be substituted for 'complaint' and 'plaintiff.'" *Western World Ins. Co. v. Architectural Builders of Westport, LLC*, 520 F.Supp. 2d at

---

[2]   While in his Memorandum of Law Plaintiff does not name the authority under which he brings his Motion to Dismiss, it is apparent to the Court that such authority is Fed. R. Civ. P. 12(b)(6), as Plaintiff states in his Memorandum that Defendant's "Counterclaim should be dismissed for failure to state claim," [Doc. 33] at 2, and, as well, because Plaintiff's Notice of Motion to Dismiss the Complaint, which the Court construes as a Motion to Dismiss, states that Plaintiff "will move this Court as soon as counsel may be heard for an Order dismissing the Counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." [Doc. 33-1] at 1.  *See also* Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Dismiss the Counterclaim, in which Plaintiff writes that such motion was made "pursuant to Federal Rule of Civil Procedure 12(b)(6)." [Doc. 39] at 2.

410 n.5.  So as not to create confusion, in this legal discussion the Court substitutes the term "counterclaimant" for "plaintiff" and the term "counterclaim" for "complaint."

A court's focus on a motion to dismiss under Rule 12(b)(6) is "not whether the [counterclaimant] will ultimately prevail but whether the [counterclaimant] is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).  For this reason, when "deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the [counterclaim] and must draw inferences in a light most favorable to the [counterclaimant]." *Moore v. Mara*, 3:08-CV-01946, 2010 WL 3270223 at *3 (D. Conn. August 17, 2010).

However, while a counterclaim need not contain detailed factual allegations to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it will not suffice if it merely "tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Towmbly*, 550 U.S. 544, 557 (2007)).  Thus a counterclaimant must do more than provide labels and conclusions; "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.  "In its review of a motion to dismiss, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken.'" *Western World Ins. Co. v. Architectural Builders of Westport, LLC*, 520 F.Supp. 2d at 410 (quoting *Samuels v. Air Transp. Local 504*, 992 F.ed 12, 15 (2d Cir. 1993)).  "To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

5

B.      **Legal Discussion**

1.      **Defamation and Libel Per Se**

In this diversity action, this federal court applies the substantive law of Connecticut, the state in which it sits.  Under Connecticut law, "[l]ibel per se ... is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages." *Ambrozaitis v. Lord,* CV05-4004557S, 2007 WL 969612 at *2 (Conn. Super. March 21, 2007); *see also, e.g., Mederios v. Sutherland*, CV95-005980S, 2009 WL 3839415 at *2 (Conn. Super. Oct. 23, 2009).  "Two of the general classes of libel which, it is generally recognized, are actionable per se are (1) libels charging crimes and (2) libels which injure a man in his profession and calling." *Stapleton v. Monro Muffler, Inc.*, CV98-0580365, 1998 WL 774134 at *3 (Conn. Super. Oct. 22, 1998) (quoting *Proto v. Bridgeport Herald Corp*., 136 Conn. 557, 565-662 (Conn. 1950)).  In order "[t]o fall within the second category of libels," i.e., those which injure a man in his profession and calling, "the libel must be one which 'charges improper conduct or lack of skill or integrity in one's profession and is of such a nature that it is calculated to cause injury to one in his profession.'" *Id.* (quoting *Moriarty v. Lippe,* 162 Conn. 371, 386 (Conn. 1972)).

Defendant Silver's Amended Counterclaim against Plaintiff purports to fall into such a category.  "All of the circumstances connected with the publication of defamatory charges should be considered in ascertaining whether a publication was actionable per se.  The words used ... must be accorded their common and ordinary meaning, without enlargement or innuendo." *Letourneau v. Zitel*, CV12-6008811, 2013 WL 811871 at *5 (Conn. Super. Jan. 24, 2013) (quoting *Miles v. Perry*, 11 Conn. App. 584, 602-3 (Conn. App. 1987)).

Earlier this year, the Connecticut Supreme Court reaffirmed and restated what Connecticut

6

courts have long held: that under Connecticut law in order "[t]o establish a *prima facie case* of defamation" – which includes those claims which are for libel per se – a party "must demonstrate that: (1) [another party] published a defamatory statement; (2) this defamatory statement identified [the pleading party] to a third person; (3) this defamatory statement was published to a third person; and (4) the [pleading party's] reputation suffered injury as a result of the defamatory statement." *Simms v. Seaman*, 308 Conn. 523, 547-48 (Conn. 2013) (emphasis added) (quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28 (Conn. 2009)); *see also, e.g., Hopkins v. O'Connor*, 282 Conn. 821, 838 (Conn. 2007); *Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210, 217 (Conn. 2004); *Zello v. Birk*, CV10-6004385, 2011 WL 3587396 at *1 (Conn. Super. July 15, 2011), *Integrated Sec. Solutions, LLC v. Security Technology Systems, LLC*, No. 4001811, 2007 WL 2757141 at *2 (Conn. Super. Sept. 11, 2007) (citation omitted).

Multiple Connecticut courts have held that when a party alleges libel per se – which "is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages," courts and "the law conclusively presume[] the existence of injury to [that party's] reputation," and accordingly that party "is required neither to plead nor to prove it ... Whether a question is libelous per se is a question for the court." *Lowe v. Shelton*, 83 Conn. App. 750, 765-66 (Conn. App. Ct. 2004); *see also, e.g.*, *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 848 (Conn. App. Ct. 2005) (quoting same); *Ambrozaitis v. Lord*, 2007 WL 969612 at *2; *Rom v. Fairfield University*, CV02-391512S, 2006 WL 390454 at *2 (Conn. Super. Jan. 30, 2006).

In his pleadings on this topic, Plaintiff does not mention or discuss the Connecticut standards for a *prima facie* case for defamation, or, for that matter, the Connecticut definition or standards for a claim of libel per se. Rather, Plaintiff cites and relies upon the Connecticut Superior Court's

decision in *Timbro v. Hertler*, No.CV-44002396S, 2006 WL 1230560 at *3 (Conn. Super. April 24, 2006) in order to lay out four essential elements which, Plaintiff avers, are required for a cause of action for defamation.  Plaintiff contends that given that Defendant cannot meet these elements, the Court ought to dismiss Defendant's Counterclaim.  *See* [Doc. 33] at 2.  The four elements which Plaintiff cites and discusses  are: "(1) a false statement of fact; (2) unprivileged publication of the statement; (3) publication caused by negligent or intentional conduct; and (4) injury to reputation." *Id.; see also Timbro v. Hertler*, 2006 WL 1230560 at *2 (citations omitted).

Plaintiff is not incorrect in his caselaw citation; the four elements recited above do constitute one formation of the test for defamation under Connecticut law, and are indeed provided as such in *Timbro v. Hertler*.  Moreover, other Connecticut courts have phrased the general Connecticut test for defamation in essentially similar ways.  For example, in 1995 the Connecticut Supreme Court stated that "[t]o find that the defendants were liable for defamation ... [a court is] required to find that [one party has] published false statements that harmed [the other], and that the [party that had published such statements] was not privileged to do so."  *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 27 (Conn. 1995) (quoting *Kelley v. Bonney*, 221 Conn. 549, 563 (Conn. 1992)); *see also, e.g., Alexandru v. Northeast Utilities Services Co.*, 3:95-CV-00461, 1996 WL 684421 at *5 (D.Conn. Oct. 10, 1996) (quoting same).  However, the four-element test on which Plaintiff relies and focuses throughout his Memorandum of Law is not the Connecticut test for a *prima facie case for defamation*, which *must be addressed prior to any additional inquiry*, including that addressed by Plaintiff in his briefing on this motion to dismiss.

### a. Whether Defendant has Established a Prima Facie Claim of Libel Per Se and Defamation

The Court first turns to the question of whether Defendant Silver has, in his Amended Counterclaim, presented sufficient evidence which, if believed, would establish a prima facie claim of defamation and libel per se. Put another way: the Court now examines whether the facts as alleged in Defendant Silver's Amended Counterclaim, when taken as true, support a claim that Plaintiff published a defamatory statement about Defendant, thereby identifying Defendant to a third person. Notably, because Defendant's Counterclaim is for libel per se, damages, or an injury to Defendant's reputation, are to be assumed by this Court. "[W]hen examining the evidence in the light most favorable to the [party alleging libel per se], the element of harm to [that party's] reputation is satisfied because we are dealing with defamation per se," and therefore "as to the final prong of the prima facie case of defamation, that of injury to reputation, when a [party] claims defamation per se, [that party] need not prove damages." *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 848, 850 (Conn. App. Ct. 2005) (listing the elements of a prima facie case) (citations omitted). Indeed, "[w]hen the defamatory words are actionable per se, the law conclusively presumes the existence of injury to [a party's] reputation. [That party] is required neither to plead nor to prove it." *Lowe v. Shelton*, 83 Conn. App. at 765-66.

The Court finds that the statements made in Defendant's Counterclaim, if taken as true, are indeed sufficient to support a *prima facie* case of libel per se, as Defendant Silver has adequately alleged therein that: (1) Plaintiff published a defamatory statement; (2) this defamatory statement identified the pleading party to a third person; (3) this defamatory statement was published to a third person. *See, e.g., Simms v. Seaman*, 308 Conn. 523, 547-48 (Conn. 2013) (emphasis added);

9

*Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. at 850; *Lowe v. Shelton*, 83 Conn. App. at 765-66.

1.     Plaintiff Published a Defamatory Statement

Having examined the email in question, *see* [Doc. 26] at 10, the Court concludes that Plaintiff's August 4, 2010 email to Alexandre Appadoo meets the Connecticut standard for a defamatory statement for the purposes of a prima facie case in this motion to dismiss Ruling – and, therefore, the Court finds that the first element of the prima facie test is met.  "Connecticut cases accept the standard common-law definition of defamation as set forth in § 559 of Restatement (2d) Torts," which is to say, they accept "that 'a communication is defamatory if it tends so as to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Graham v. Boehringer Ingelheim Pharmaceuticals*, 2007 WL 3317528 at *2 (citing *Cweklinsky v. Mobil Chemical Co.*, 267 Conn. at 217 and *Q.S.P. v. Aetna Casualty & Surety Co.*, 256 Conn. 343, 356 (Conn. 2001)).  Given such a definition of "defamatory" communication or statement, there is little question that at least some of the contents of the email sent by Plaintiff to Appadoo, including, specifically, the statement that Defendant Silver "comes first and will clearly burn everyone else if he wants to which he did with me," is, on its face, defamatory – i.e., that it would tend to impact Silver's reputation so as to lower him in the estimation of others from associating or dealing with him.

2.     Plaintiff's Defamatory Statement Identified Defendant to a Third Party

There is little question that Plaintiff's August 4, 2010 email, which begins, "Alex ... As a fellow Booth MBA, I feel compelled to let you know about my unpleasant experience with Scott

10

Silver," and which has the subject heading "S&A - Scott Silver," identifies Defendant Silver to the third party in question, Appadoo. Given this, the Court finds that the second prong of the prima facie test, which requires that the claimant have been identified to a third party, is met.

3.    Plaintiff's Defamatory Statement Was Published to a Third Party

Accepting for the purposes of this Ruling, as the Court must, that Defendant's allegations that Plaintiff did in fact send, or publish, the relevant email to Appadoo are true, the Court also finds that the third prong of the prima facie test, i.e., the publication of such a defamatory statement to a third person, have been met. Under Connecticut law, sending an email to a third party is sufficient to constitute publication. *See, e.g., DeMaio v. Laugeni*, CV95-031921S, 2013 WL 1408636 at *9 (Conn. Super. March 14, 2013) (referring to an email which had been sent as "having been published to third persons."); *Pollack v. Eitelberg*, CV95-011274S, 2012 WL 6634693 at *5-6 (Conn. Super. Nov. 30, 2012) (discussing a claim of defamation per se with respect to the "the statements in [an] email....").

4.    Damages Must Be Assumed in Claims of Libel Per Se

As discussed *supra*, because this is a claim for libel per se, the Court must accept that the fourth element of the prima facie test, requiring that damage has been caused to Defendant, has been met. Consequently, the Court finds that, for the purposes of withstanding a motion to dismiss, Defendant has successfully met the requirements for a *prima facie* case of defamation and libel per se. The Court further notes that even if under law Defendant *did* need to show that his reputation had been damaged due to Plaintiff's email in order to make out a successful case for libel per se, his pleadings would have sufficed for purposes of surviving a motion to dismiss. Defendant alleges in his Amended Counterclaim that Defendant's professional reputation *was* harmed due to this email

11

– "[t]he statements made by Held ... indeed did cause injury to Silver's business reputation," *see* [Doc. 30-1] at 13 – and therefore, even if the element of damage *did* need to be shown in the relevant pleading, which it does not, Defendant has done so to a satisfactory degree to survive a Motion to Dismiss.

> **b.     Whether Defendant's Allegations Are Sufficient for a Claim of Defamation**

The Court now turns to the four elements of a defamation claim under Connecticut law which Plaintiff addresses in his Motion to Dismiss, discussed *supra*: (1) a false statement of fact; (2) unprivileged publication of the statement; (3) publication caused by negligent or intentional conduct; and (4) injury to reputation."  [Doc. 33] at 2*; see also Timbro v. Hertler*, 2006 WL 1230560 at *2.[3]

With respect to the third element: the Court accepts, as it must for the purposes of this Ruling, that the publication of Plaintiff's email was intentional, as all allegations in Defendant's Counterclaim suggest that Plaintiff purposefully and knowingly composed and sent this email to Appadoo, and further it is difficult to conceive of how the email would have been unintentionally written or sent.  *See* [Doc. 30-1] 11-13.  As discussed *supra*, sending an email to a third party is sufficient to constitute publication under Connecticut law.  *See, e.g., DeMaio v. Laugeni*, 2013 WL 1408636 at *9; *Pollack v. Eitelberg*, 2012 WL 6634693 at *5-6.

The Court will now address the first and second elements of a claim for defamation: that the statement in question contain a false statement of fact, and that its publication was unprivileged. Connecticut courts have been clear that "[b]efore a party will be held liable for libel, there must be

---

[3]  With respect to the fourth element – i.e., injury to reputation – the Court finds that Defendant has plead sufficiently for the purposes of this Ruling for the same reasoning this Court has articulated with respect to this requirement for a prima facie case of libel per se.

an unprivileged publication of a false and defamatory statement." *Strada v. Connecticut Newspapers, Inc.* 193 Conn. 313, 316 (Conn. 1984) (internal quotation marks and citation omitted). Unsurprisingly, Defendant and Plaintiff express different views as to whether Plaintiff's email contains opinions or facts, as well as to whether its contents are to be considered privileged.

        1.    Whether the Statements in Plaintiff's Email and Complaint Were Privileged

Plaintiff contends that the statements made within his August 4, 2010 email are privileged, as are the allegations made in his original complaint filed in this matter, which Plaintiff forwarded to Appadoo as an attachment to his email. Defendant disagrees with such assertions.

As the Connecticut Supreme Court recently commented, "[i]t is well settled that communications uttered or published *in the course of judicial proceedings* are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." *Hopkins v. O'Connor*, 282 Conn. 821, 830-31 (Conn. 2007) (emphasis added) (internal quotation marks and citation omitted). This is true "even if they are published falsely and maliciously ... provided they are pertinent to the subject of the controversy." *Id.* at 839 (citation omitted). There seems to be little question, then, that Plaintiff's *complaint itself* is privileged and Defendant cannot succeed on a defamation claim against Plaintiff on the basis of its language or contents. Notwithstanding Defendant's arguments to the contrary, the Court also concludes that Plaintiff's forwarding of this complaint to Appadoo, even if done with the explicit intention of impacting Appadoo's view on Defendant's character or reputation, is not actionable as defamation, because such an act is a truthful sharing of a privileged and public document. *See, e.g.,* the discussion contained in *Wang v. Frankl*, CV96-0391493, 1999 WL 997906 (Conn. Super. Oct. 18, 1999). Thus to the extent that Defendant's Amended Counterclaim makes allegations which are solely preoccupied with the contents of

13

Plaintiff's complaint or Plaintiff's forwarding this complaint to Appaddo, they are dismissed with prejudice.

The text of Plaintiff's email to Appadoo, however, is another matter entirely.  As the Connecticut Superior Court held in *Wang v. Frankl*, 1999 WL 997906 – a case cited by both parties in this matter – "a trier of fact could not reasonably conclude" that a party "acted recklessly or maliciously in causing the publication of ... documents" which are "*accurate summaries of [a] complaint*" brought in a judicial or quasi-judicial proceeding "and the events that ensued" in such proceeding.   *Wang v. Frankl*, 1999 WL 997906 at *4 (emphasis added).  There is therefore precedent in Connecticut law for extending the protection of absolute privilege which is afforded to those communications uttered or published in the course of judicial or quasi-judicial proceedings.

Had Plaintiff's email merely summarized the factual allegations contained in this complaint, or simply noted that the complaint had been filed, Plaintiff would have a compelling case that such privilege ought to extend to his entire email.  Indeed, as Defendant concedes, "[w]ere the sole basis of Defendant's counterclaim the defamatory allegation in the complaint, then perhaps ... Plaintiff's claim that the subject statements had essentially already been published via a public document (the complaint) would hold some validity." [Doc. 36] at 5.  "However," Defendant avers, "Plaintiff did not merely provide Appadoo with a copy of the Complaint in his malicious attempt to injure Silver's reputation and the LLC's business.  Rather he chose to editorialize" with "language [which] was not included in the Complaint and therefore had not previously been published at the time that ... Plaintiff published it to Silver's business associate, and the son of an extremely important client of the LLC." *Id.*

The Court agrees with Defendant in this respect.  While the first two substantive paragraphs

14

of Plaintiff's email  certainly summarize the contents of the complaint as well as report that this complaint was filed, aspects of the language of Plaintiff's email – specifically language contained in the email's third substantive paragraph – goes significantly beyond anything that could be considered privileged or a mere summary of the contents of Plaintiff's complaint.

Plaintiff's August 4, 2010 email's third substantive paragraph consists of two sentences: "I think Scott is an honorable guy and I'm sure he would truly like to pay me.  However, he comes first and he will clearly burn everyone else if he wants to which he did with me." [Doc. 26] at 10.  The Court concludes that both these sentences go significantly beyond a mere summary of what is contained in the Complaint – and, accordingly, cannot be found to automatically receive the privilege associated with a complaint under Connecticut law.

2.       Whether the Statements in Plaintiff's Email Were Opinion or Fact

This last conclusion does not end the matter.  Plaintiff also argues that even if privilege does not attach to all of the statements contained within his August 4, 2010 email (as the Court now concludes to be the case), these statements contain nothing more than Plaintiff's opinion with respect to Defendant and, as such, are not actionable for libel per se.

"Under Connecticut law, statements of opinion generally cannot serve as the basis for a defamation claim."  *Lopos v. City of Meriden Bd. of Educ.*, 3:04-CV-00352, 2006 WL 1438612 at *8 (D. Conn. May 16, 2006) (citing *Grossman v. Computer Curriculum Corp.*, 131 F.Supp. 2d 299, 312 (D.Conn. 2000)); *see also   Daley v. Aetna Life and Casualty Co.,*, 249 Conn. 766, 795 (Conn. 1999) ("To be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion.").  However, courts have repeatedly acknowledged that is less clear where fact ends and opinion begins.  As the United States Supreme

Court commented nearly a quarter of a decade ago: "If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth ... Simply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990).

Indeed, "[m]erely because a statement is phrased as an opinion does not ... mean that it is not actionable.  Connecticut courts have generally found that one must look at the context and the implications of the statement when determining if it was actionable or not." *Sweeny v. Faracalas*, CV95-029383, 2010 WL 1508305 at *4 (Conn. Super. March 10, 2010) (citation omitted). Conversely, "an opinion that appears to be in the form of a factual statement may still be an opinion if it is clear from the context that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated." *Colon v. Town of West Hartford*, 3:00-CV-00168, 2001 WL 45464 at *4 (D. Conn. Jan. 5, 2001) (internal quotation marks and citation omitted).  A court's "distinction between fact and opinion cannot be made in a vacuum, however ... while this distinction may be somewhat nebulous ... [t]he important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 111-12 (Conn. 1982).  Thus a "statement in the form of an opinion" will be "actionable ... [is] if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Shea v. City of Waterbury*, CV85-007926, 2009 WL 1057986 at *5 (Conn. Super. Feb. 20, 2009) (citations omitted).

The above-cited caselaw makes clear that the context in which allegedly defamatory statements arise matters much in a court's determination of whether such statements ought to be considered statements of fact or opinion.  As the Connecticut Supreme Court has stated, "although an opinion may appear to be in the form of a factual statement, it remains an opinion if it is clear from the context that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated." *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. at 111 (internal quotation marks and citation omitted); *see also, e.g., Letourneau v. Zitel*,2013 WL 811871 at *4 (quoting same); *Hearn v. Yale-New Haven Hosp.*, CV02-0466339S, 2007 WL 2938624 at *11 (Conn. Super. April 2, 2007) (quoting same).   A critical aspect of any such contextual inquiry is a determination of whether the statements in question appear to be based on facts unknown to the reader or listener.  "The court's task is to determine whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion." *Colon v. Town of West Hartford*, 2001 WL 45464 at *4 (internal quotation marks and citation omitted).  Indeed, while "[p]ure opinion is a personal comment about another's conduct, qualifications[,] or character that has some basis in known or disclosed facts," a statement of opinion which "criticizes or comments on facts that are not stated or known is not protected as pure opinion because it implies that the writer knows certain facts that are not disclosed to the reader which support his opinion." *Id.*[4]

---

[4]  As the Connecticut Superior Court stated in *Shea v. City of Waterbury*, the Connecticut Supreme Court, "albeit in the different context of 'fair comment,' noted that ... 'an opinion must be based upon facts; if the facts are neither known nor stated, then a defamatory opinion implies that there are undisclosed defamatory facts which justify the opinion,'" and "[t]he damage of such an implication is that the person defamed becomes the victim of the prejudiced and distorted

When a Court cannot determine with clarity whether a statement is one of opinion or fact, the question ought to be put to a jury: "The determination of whether a statement is one of opinion or objective fact is a matter of law *unless* the statement is ambiguous; in that case the determination is a question of fact for the jury." *Lopos v. City of Meriden Bd. of Educ.*, 2006 WL 1438612 at *8 (emphasis added) (citation omitted). Thus "[w]here the court cannot reasonably characterize the allegedly libelous words as either fact or opinion because, for example, innuendo is present, this becomes an issue of fact for the jury, which would preclude a directed verdict. This is similar to the rule which requires the jury to decide whether an ambiguous assertion is reasonably capable of a defamatory meaning." *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. at 112 n.5.

In the case at bar, the Court concludes that such clarity is not lacking. The language in Plaintiff's August 4, 2010 email which could be construed as either opinion or fact is the second sentence of the third substantive paragraph, made in reference to Defendant Scott Silver, which reads: "However, he comes first and he will clearly burn anyone else if he wants to which he did with me." [Doc. 26] at 10.[5] Plaintiff contends that these statements, which follow the first sentence of

---

judgment of not only the defamer, but also of everyone who hears and believes the opinion without knowing it is based on incorrect and untrue facts." *Shea v. City of Waterbury*, 2009 WL 1057986 at *5 (quoting and citing *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. at 118). "In short," then, the Superior Court concluded, "expressions of 'pure' opinion (those statements based upon known or disclosed facts) are guaranteed virtually complete ... protection," but, "[o]n the other hand, opinion statements that imply knowledge of existing facts are not protected and can ultimately be considered as defamatory as pure factual statements." *Id.* (internal quotation marks removed) (citation omitted). In the case before it, the Superior Court concluded that statements which both parties agreed constituted opinion rather than fact were indeed actionable as it was "not apparent from the face of the complaint the context in which the statements were made [or] whether the statements ... were based on facts that were stated or known thereby transforming them into pure opinion statements." *Id.* at *4-5.

[5]  The fourth substantive paragraph of this email, which immediately follows this language, states: "If you would like to chat, I am available any time at [phone number]. I think it

the third substantive paragraph – i.e., "I think Scott is an honorable guy and I'm sure he would truly like to pay me," *id.* – are clearly expressions of Plaintiff's *opinion* of Defendant based upon the events described in the complaint. The Court agrees.

While the Court finds that the statement that Silver "*will* clearly burn anyone else if he wants to which he did with me," *id.* (emphasis added), to be clearly speculative and therefore a statement of opinion rather than one of fact, taken alone the statement that "[Silver] comes first" *could* be construed as a statement of fact regarding Defendant's character rather than mere opinion. However, given the context in which this statement was made – i.e., in an email in which Plaintiff sought to inform Appadoo of his lawsuit against Defendant and forwarded to Defendant a copy of the complaint filed therein – this Court finds it implausible that any reader or recipient of such correspondence would reasonably understand the words "he comes first" to imply an assertion of *undisclosed facts* justifying this opinion. *See, e.g., Colon v. Town of West Hartford*, 2001 WL 45464 at *4; *Shea v. City of Waterbury*, 2009 WL 1057986 at *4-5. On the contrary, this statement is clearly and exclusively based upon the facts and events detailed and described in the complaint; no matter how erroneously such facts and events have been presented therein, they are not *undisclosed*, and therefore this Court cannot and does not find any plausible way for any of the contents of Plaintiff's August 4, 2010 email to be found defamatory under Connecticut law.

## III.    Conclusion

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Dismiss Defendant's Amended Counterclaim for libel per se [Doc. 33-1] in its entirety and accordingly Defendant's

---

definitely makes sense for us to compare notes." *Id.*

Amended Counterclaim for libel per se, contained within [Doc. 32], is DISMISSED with prejudice.

It is SO ORDERED.


Dated: New Haven, Connecticut
October 16, 2013

/s/ Charles S. Haight, Jr.
Charles S. Haight, Jr.
Senior United States District Judge

20