**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ERIC HELD,<br><br>Plaintiff,<br>v.<br><br>SCOTT SILVER and SILVER AND ASSOCIATES, LLC,<br><br>Defendants. | 3:10-cv-00992 (CSH) |

**RULING ON PLAINTIFF'S MOTION FOR SANCTIONS**

**HAIGHT, Senior District Judge:**

## I. Introduction and Summary of Facts

Plaintiff Eric Held (hereinafter "Plaintiff") has brought this action against Defendants Scott Silver and Silver and Associates LLC (hereinafter collectively "Defendants"), alleging in his Amended Complaint that Defendants had issued him a "fraudulent promise of compensation," on which he relied, thereby "turn[ing] down an outstanding offer at a competing, established financial advisory firm, which had offered him annual compensation totaling approximately $250,000.00." [Doc. 18] at 5. Accordingly, Plaintiff brings six causes of action against Defendants: breach of contract; fraud; failure to pay wages in violation of C.G.S.A. § 31-72; unjust enrichment; *quantum meruit*; and promissary estoppel. *Id.* at 14-21.

On November 7, 2012, Plaintiff filed a Motion for Sanctions against Defendants pursuant to Fed. R. Civ. P. 37(f) "for their failure to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f) of the Federal Rules of Civil Procedure," and

moved that the Court "assess monetary sanctions against Defendants in the amount of $1,740.00, representing attorney's fees Plaintiff would have incurred as a result of Defendants' failure to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f)." [Doc. 60] at 1. Such fees arise out of a motion for default entry Plaintiff filed pursuant to Fed. R. Civ. P. 55(a).

The Court convened a hearing on discovery-related matters on October 29, 2013, and by separate Order filed together with this one, the Court sets forth several discovery and case management deadlines.

The Court now decides Plaintiff's Motion for Sanctions.

**II. Legal Discussion**

Plaintiff has filed a Motion for Sanctions against Defendants pursuant to Fed. R. Civ. P. 37(f), claiming that Defendants have failed "to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f) of the Federal Rules of Civil Procedure," and therefore moving that the Court "assess monetary sanctions against Defendants in the amount of $1,740.00, representing attorney's fees Plaintiff would have incurred as a result of Defendants' failure to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f)." [Doc. 60] at 1.

Under Fed. R. Civ. P. 37(f), "[i]f a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f), the court may, after giving an opportunity to be heard, require that party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(f). Imposing sanctions under Fed. R. Civ. P. 37 "is within the discretion of the district court." *World*

*Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)). The "text of the rule requires only that the district court's orders be 'just' ... and ... the district court has 'wide discretion in imposing sanctions'" under this Rule. *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007)). In considering possible sanctions, "it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by" the alleged misconduct. *Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d at 159 (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d at 1176).

Plaintiff contends that his counsel, Michael Rooney, "conferred on several occasions" between January and May of 2012 "with Defendants' counsel James Winkel and Stephen Wright for the case management purposes described in Fed. R. Civ. P. 26(f)," and that "[b]y late May, the parties were on the verge of agreement on a joint Form 26(f) statement, including a case management plan which was to govern the progress of this matter," when in June of 2012 counsel for Defendants moved to withdraw as attorneys for their clients. [Doc. 61] at 2. In their Motion for Withdrawal of Appearance, i.e., [Doc. 41], attorneys Winkel and Wright stated that Defendants had "failed to pay for services rendered and ha[d] an admitted inability to pay for future work," and, "[a]s a result thereof, there ha[d] been an irreparable breakdown in the attorney-client relationship and a breach of the retention agreement between counsel and the Defendants." [Doc. 41] at 1. The Court, while noting and taking under advisement the Memorandum in Opposition submitted by Plaintiff in response to the Motion for Withdrawal of Appearance filed by Defendants' attorneys, i.e., [Doc. 44],

held that "Defendants' counsel ha[d] shown good cause for permitting their withdrawal ... by representing to the Court that Defendants have not paid them for services in this action and that Defendants have admitted their inability to pay their counsel for future work," and therefore granted, for good cause shown, the Motion to Withdrawal of Appearance. *See* [Doc. 45] and [Doc. 50].

Plaintiff avers that "[a]fter the withdrawal of their attorneys, Defendants failed to retain counsel or [to] appear *pro se* and made no other effort to defend or plead in this matter," and that "Defendant Scott Silver confirmed that he had no plans to retain new counsel in a telephone conversation with Plaintiff's attorney in late July 2012." [Doc. 61] at 3. Accordingly, Plaintiff writes, as a result of "Defendants' failure to litigate," Plaintiff "fil[ed] a *Motion for Default Judgment* on August 17, 2012," which Plaintiff then withdrew on October 5, 2012 after Defendants re-retained attorney Stephen Wright, one of their former attorneys who had formerly withdrawn as counsel, in September of 2012. *Id.* at 3 (emphasis added); *see also* [Doc. 51] and [Doc. 59]. Plaintiff's aforementioned motion for default requested that "the Court ... enter default against Defendants ... in this action" given the events recounted above and, specifically, the fact that over a month after the Court's Order of Withdrawal of Defendants' representation, "substitute counsel has not appeared and no pro se appearance has been made." [Doc. 51] at 2.

Plaintiff avers that "Defendants' behavior smacks of bad faith" and that, "[l]acking viable defenses, it appears that Defendants have resorted to playing games with their legal bills in an attempt to delay this matter and frustrate Plaintiff from proceeding with his claims ... to delay and possibly evade an inevitable judgment." [Doc. 61] at 4. Plaintiff further avers that such behavior "has prejudiced Plaintiff by frustrating his attempts to formulate and submit a proposed discovery plan as required by Rule 26(f) and by prompting an unnecessary *Motion for Default Judgment*," and

that, "[a]ccordingly, the Court should impose sanctions on Defendants in the amount of $1,740, representing the amount that Plaintiff would have been charged for work performed on the unnecessary *Motion for Default Judgment*." *Id.* at 4-5 (emphasis added).

Among the documents submitted in support of Plaintiff's Motion for Sanctions was a time sheet kept by Plaintiff's attorney which reflects a total of 522 minutes, or 8.7 hours, spent on research and other preparations for Plaintiff's August 17, 2012 motion for default. [Doc. 66-2]. The breakdown was as follows:

- Rule 55 research - *1 hour and 54 minutes*
- Drafting and editing motion for entry of default - *1 hour and 48 minutes*
- Reviewing the Federal Rules of Civil Procedure regarding entry of a default - *1 hour and 12 minutes*
- Final draft of default motion - *2 hours and 18 minutes*
- Emails with Plaintiff regarding drafts and edits - *12 minutes*
- Producing and e-filing the default motion - *1 hour and 12 minutes*
- Emailing Plaintiff regarding the filing of the default motion - *6 minutes*

*See id.* Presumably, the 8.7 hours of Plaintiff's counsel's time incurred billable attorney's fees of $1740.00.

As an initial matter, the Court is compelled to note that contrary to Plaintiff statements that he had "fil[ed] a Motion for *Default Judgment*," [Doc. 61] at 3 (emphasis added); that Defendants' behavior "prompt[ed] an unnecessary Motion for *Default Judgment*," *id.* at 5 (emphasis added); and that "the Court should impose sanctions on Defendants ... for work performed on the unnecessary

Motion for *Default Judgment*," *id.* (emphasis added),[1] in fact to date Plaintiff *has not and has never filed any motion for default judgment* in this matter; rather, on August 17, 2012, he filed a *Motion for Default Entry* which he later withdrew on October 5, 2012. *See* [Doc. 51] (Plaintiff "moves this Court to *enter default* against Defendants ... [p]ursuant to *Federal Rule of Civil Procedure 55(a)*....") (emphasis added); [Doc. 59] ("Plaintiff ... hereby withdraws his *Motion for Entry of Default* against Defendants....") (emphasis added).

There is a significant difference between a motion for default entry and a motion for default judgment, both of which are made pursuant to Fed. R. Civ. P. 55; there is also a significant difference between what it means for there to be an entry of default as opposed to ruling of default judgment. Given that, it is unsurprising that there is, as well, a significant difference in the amount and type of time and work that goes into an attorney's preparation of a motion for default entry as opposed to an attorney's preparation of a motion for default judgment.

As the Second Circuit recently noted, "Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation ... Rule 55 provides a two-step process for the entry of judgment against a party who fails to defend; first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (internal quotation marks and citations omitted). Whereas "[t]he first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff," and is "governed by Rule 55(a)," it is "[t]he second step, entry of a default judgment, [which] converts the defendant's admission of liability into

---

[1] See also the declaration of Plaintiff's attorney Michael Rooney for additional erroneous statements regarding Plaintiff's alleged filing of a "Motion for Default *Judgment*." [Doc. 62] at 2 (emphasis added).

a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled." *Id.* In contrast to the entry of a default, which is a "ministerial step to be performed by the clerk of court" and which has been described as "largely a formal matter," a "default judgment is a final action by the district court in the litigation." *Id.* at 128-129 (quoting *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1152 n.11 (2d Cir. 1995) and *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

Defendants have opposed Plaintiff's Motion for Sanctions, stating that Defendant Scott Silver had "fallen on difficult financial times," that he had lost at least one of his homes and was about to lose another, and that it "was not by design that he fell behind on his financial obligations to his prior attorneys." [Doc. 66] at 2. Defendants also aver that attorney Stephen Wright had agreed to represent them despite their prior failure to pay for his services "because the owners of [his] firm [did] not want to see [Defendants] lose [their] day in Court," and were hopeful that Defendants would eventually pay their bill. *Id.* Defendants further state that the "brief delay the Plaintiff is complaining about in the discovery process has been remedied by Plaintiff's attorney's discussions with Defendants' attorney," and that, since the (re)appearance of attorney Wright, "the Plaintiff's attorney ha[d] not [yet] suggested dates to have the [26(f)] conference nor has he forwarded to Defendants' attorney a copy of the almost finalized Form 26(f) statement." *Id.*[2]

Defendants contend that they "did not intentionally inconvenience the Plaintiff." *Id.* at 3. They also make mention of the fact that "[t]he time sheet submitted with this motion indicates that it took close to nine (9) hours for the Plaintiff's attorney to prepare a motion for default for failure

---

[2] As noted *supra*, the Court has now convened a hearing with respect to discovery-related matters in this action, and by separate Order filed together with this one sets forth discovery and case management deadlines.

to appear," which Defendants argue "is an excessive amount of time for a federal practitioner to prepare a motion for default[,] not to mention [that] the pleading is a form which Plaintiff's attorney represents went through at least three (3) revisions." *Id.* at 2-3. Accordingly, "[s]eeking sanctions of attorneys' feed against the Defendants of $1,740.00 because the Plaintiff filed a motion [for] default for failure to appear would be grossly unfair." *Id.* at 3.

Lastly, Defendants argue that "Plaintiff's motion fails to comply with the local rules of this district" in that Local Rule 11 "requires that all motions for sanctions or attorney's fees shall be filed within 30 days after the entry of judgment."[3] *Id.* at 1.

Plaintiff counters Defendants' contentions by stating that any explanation that Defendants have fallen on difficult financial times "has at all times been and remains ... not credible." [Doc. 67] at 3. Plaintiff also states that "[w]hether or not Defendants' counsel is currently ... prepared" to engaged in a Rule 26(f) conference "is not the point," and that rather "[a]t issue here is the apparent bad[] faith conduct of Defendants (and not their counsel) over the course of 2012 which delayed discovery and which resulted in Plaintiff expending time and energy on" his motion for default.[4] Accordingly, "[r]egardless of current developments in the case, Defendants' apparent bad[] faith conduct has irrevocably delayed the progress of discovery, and compelled Plaintiff to engage in

---

[3] Defendants also contended that Plaintiff's Motion for Sanctions failed to comply with Local Rule 7(a) in that it was not accompanied by a written memorandum of law. [Doc. 66] at 1. The Motion for Sanctions was in fact accompanied by a written memorandum of law, as Defendants acknowledged in subsequent Court filing, submitted "to correct the inaccuracy in their objection to Plaintiff's Motion for Sanctions." [Doc. 70] at 1. As Defendants have "ask[ed] the Court not to consider that argument as a basis for denying the motion," *id.,* the Court will not further address it.

[4] NB, Plaintiff again in his Reply Brief refers to the August 17, 2012 Motion for Default Entry as a "Motion for *Default Judgment*." *See* [Doc. 67] at 3 (emphasis added) (discussing "Plaintiff expending time and energy on his motion for default judgment.")

motion practice that would not have been necessary had Defendants complied with their obligations in good faith." *Id.*

Plaintiff also disputes Defendants' contention that the amount of money and time Plaintiff's counsel would have billed Plaintiff for his work on Plaintiff's August 17, 2012 motion for default is excessive. Plaintiff writes: "The motion for *default judgment* was a *potentially dispositive motion* which required some care and diligence to properly research and draft," and that, therefore, Plaintiff's counsel "acted reasonably in spending 8.7 hours working on this important pleading." *Id.* at 5 (emphasis added). Plaintiff attempts to bolster this claim by adding that, "[f]urthermore, in this circuit, 17.5 hours of work – more than twice the amount of time billed in this case – have been held 'not excessive' for purposes of a *motion for default judgment*." *Id.* (emphasis added). Thus, Plaintiff moves this Court to "use its 'wide discretion' and sanction Defendants in the amount of $1,740.00 for discovery abuses pursuant to Rule 37(f) of the Federal Rules of Civil Procedure." *Id.*

The arguments Plaintiff puts forth with respect to the 8.7 hours reportedly spent on the August 17, 2012 motion, and the $1740.00 that Plaintiff's counsel states he is now owed for his time and work on the same, would be significantly more compelling if the motion were indeed a motion for default judgment. However, as has already been established *supra*, Plaintiff's August 17, 2012 motion was *not* a motion for default judgment; it was a motion for default entry, which is not in fact a dispositive motion. Default entry occurs pursuant to Fed. R. Civ. P. 55(a), which states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Default entry is therefore not difficult to show should the facts support it, and, as already mentioned in this Ruling, has previously been referred to by this circuit

as being a chiefly "ministerial step to be performed by the clerk of the court." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d at 128 (citation omitted); *see also, e.g., Peterson v. Syracuse Police Dept.*, 467 Fed. Appx. 31, 32 (2d Cir. 2012) (citing *Beller & Keller v. Tyler*, 120 F.3d 21, 22 n.1 (2d Cir. 1997)).

There is no question, therefore, that a motion for default entry requires significantly less work and significantly less of a factual and legal showing than a motion for default judgment, which is indeed a dispositive motion which the Court may enter against a party pursuant to Fed. R. Civ. P. 55(b)(2) if that party that has failed to plead or otherwise defend an action brought against it. In such a circumstance, and because a defendant's default is "an admission of all well-pleaded allegations against the defaulting party," *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004), in order to insure proper entry of default judgment, it is incumbent on the Court to review whether the allegations of the complaint state a legal claim – a much more weighty and intensive process than merely determining under Fed. R. Civ. P. 55(a) that a party "has failed to plead or otherwise defend," as is required for a default entry. *See, e.g., Evanauskas v. Strumpf,* No. 3:00-CV-1106 (JCH), 2001 WL 777477, at *1 (D.Conn. June 27, 2001) ("before [default] judgment can be entered, the court must determine whether plaintiff's factual allegations are sufficient to state a claim for relief on each of the causes of action for which the plaintiff seeks judgment by default") (citing *Au Bon Pain Corp.,* 653 F.2d at 65)*; LaBarbera v. Interstate Payroll Co.*, No. 07-CV-1183 (FB)(MDG), 2008 WL 766982, at *1 (E.D.N.Y. Mar. 20, 2008) (upon default, "[a] district court must nevertheless determine whether the allegations state a claim upon which relief may be granted") (citing *Au Bon Pain Corp*., 653 F.2d at 65); *Leider v. Ralfe*, No. 01-CV-3137 (HB)(FM), 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) ("[e]ven after [a] default, ... it remains for the

court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law") (citation omitted). Thus the Court is in agreement with Plaintiff that it would be entirely unsurprising that an attorney spent 8.7 hours of work on a *motion for default judgment*, given the issues its briefing on the matter must touch upon, and as well, given the issues a court must review and consider when determining whether such a motion is to be granted.

However, the Court is unconvinced that 8.7 hours constitutes "reasonable expenses, including attorney's fees" for the research, production, and filing of a *motion for default entry*. *See* Fed. R. Civ. P. 37(f). Plaintiff's August 17, 2012 Motion for Entry of Default was two and a half pages long (including the signature and address lines of Plaintiff's attorney). It contains a caption, a paragraph declaring the relevant Rules of Civil Procedure being evoked, and nine enumerated paragraphs which recount a course of events leading to the withdrawal of Defendants' attorneys and the fact that substitute counsel had not yet appeared nor pro se appearance been made. Plaintiff's Motion for Entry of Default does not contain any case law citations. It does not even quote the civil procedural rules which it evokes.

Furthermore, Plaintiff's August 17, 2012 motion for entry of default was predicated upon the language of Local Rule 7(e), under which a party whose attorney is withdrawing must receive notice "that failure to either engage successor counsel or file a pro se appearance ... may result in a dismissal or default being entered against the party." However, Local Rule 7(e) does not set forth any set number of days in which that party must either enter its own appearance or engage new counsel. *See* Local R. Civ. P. 7(e). Furthermore, the Court did not set a deadline for Defendants to do so in any of the Orders or Notices it issued concerning the withdrawal of Defendants' counsel,

which as noted *supra* the Court ultimately granted for good cause shown on July 12, 2012. [Doc. 50]. There was, therefore, no clear and obvious default via a failure to defend on the part of Defendants, and any grant of default entry, had Plaintiff not withdrawn the motion before it had been ruled upon, would have been discretionary. The motion was not required or necessary and Plaintiff was not, as he writes, compelled or otherwise forced to write or file it; it was an optional strategy undertaken by Plaintiff and Plaintiff's counsel.

Particularly given that Plaintiff's counsel has indicated in pleadings and in the Court's October 29, 2013 hearing that discovery and discovery-related communications have continued subsequent to Defendants' counsel reappearing in this matter; given that Defendants' counsel had, after rejoining the action, indicated his willingness to hold discussions concerning a Rule 26(f) report and discovery plan; and given that despite Plaintiff's contentions that Defendants were not in financial difficulty as they claimed (the supporting documents for which the Court has closely reviewed)[5], the Court does not agree with Plaintiff that any of Defendants' actions rise to a level which would necessarily constitute bad faith, or, for that matter, compel the Court to order Defendants to pay for what does seem a somewhat excessive 8.7 hours for a federal practitioner to have billed for a two and a half page motion for default entry. With respect to Plaintiff's claims of bad faith: Federal Rule of Civil Procedure 37(f) is pertinent to situations in which "a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f)." Fed. R. Civ. P. 37(f). While the timing of the withdrawal of Defendants'

---

[5] Furthermore, a showing that Defendant Silver & Associates was in the time periods in which it claimed financial difficulty also raising money to fund various ventures does not necessarily demonstrate that this Defendant itself had available money for its defense in this action. *See* [Doc. 68-1], [Doc. 68-2], [Doc. 68-3], and [Doc. 68-4].

attorneys may have been disruptive given how close Plaintiff reports the parties were in reaching a final Rule 26(f) report, and while the Court is sympathetic to Plaintiff's frustration with what Plaintiff claims was Defendants' (if temporary) subsequent indication they would not hire new counsel, or, presumably, work on discovery, the Court does not find in this instance that requiring Defendants to pay $1740.00 for 8.7 hours of attorney's fees for what is in essence a very simple motion in order to request what is largely a formal and ministerial matter to be reasonable. *See* Fed. R. Civ. P. 37(f).

As discussed *supra*, in considering possible sanctions, "it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by" the alleged misconduct. *Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d at 159 (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d at 1176). Ultimately, it is within the discretion of the district court whether to award such sanctions. *See id.* Furthermore, the "text of the rule requires only that the district court's orders be 'just.'" *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007)). Under the circumstances of this pleading, the Court finds that the sanctions requested by Plaintiff are not warranted; the Court therefore declines to grant them.[6]

---

[6] The Court does note its agreement with Plaintiff that Defendant's contention that Plaintiff's Motion for Sanctions is untimely under Local Rule 11 comes from an improper reading of that Rule, which merely states that all motions for attorneys' fees or sanctions must be filed and served within thirty days after a judgment is rendered. *See* Local R. Civ. P. 11. Accordingly, Defendants' argument that as there had not yet been a judgment, Plaintiff could not file a motion for sanctions does not hold water; Local Rule 11 sets an outside deadline for such motions, rather than a limitation on when and whether they may be filed during the course of a pending action.

## III. Conclusion

The Court accordingly DENIES Plaintiff's Motion for Sanctions [Doc. 60] WITH PREJUDICE.

It is SO ORDERED.

Dated: New Haven, Connecticut
October 29, 2013

*/s/ Charles S. Haight, Jr.*
Charles S. Haight, Jr.
Senior United States District Judge